## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION,
1333 H St. NW
Washington, DC 20005

        *Plaintiff,*

        vs.

UNITED STATES DEPARTMENT OF THE
INTERIOR
1849 C St. NW
Washington, DC 20240

        and

UNITED STATES BUREAU OF LAND
MANAGEMENT
1849 C St. NW
Washington, DC 20240
        *Defendants.*

Case No. _____

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     On April 3, 2017, the Department of Interior's ("DOI") Office of Natural

Resources Revenue ("ONRR") published a notice seeking nominations for the Royalty Policy

Committee ("RPC"), 82 Fed. Reg. 16222, a committee established pursuant to the Federal

Advisory Committee Act, 5 U.S.C. App'x 2.  On September 1, 2017, DOI Secretary Ryan Zinke

announced the appointment of 20 primary members, and 18 alternate members, to the RPC.[1]  On

---

[1] *See* Press Release, DOI, Sec'y Zinke Appoints Members to the Royalty Policy Comm., Announces First Meeting (Sept. 1, 2017), *available at* https://www.doi.gov/pressreleases/secretary-zinke-appoints-members-royalty-policy-committee-announces-first-meeting.

May 9, 2018, Plaintiff Democracy Forward Foundation ("Plaintiff") submitted requests to DOI

and the Bureau of Land Management ("BLM"; collectively, "Defendants") under the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), so that it could understand and inform the public

about the process by which the members of the RPC were chosen. The statutory deadline for

DOI and BLM to respond has now passed without any substantive response.

2.      The RPC advises DOI and BLM on issues related to the compensation that

taxpayers receive (in the form of royalty payments) when public lands and energy resources are

leased to private companies for activities such as natural resource exploration and extraction.

3.      The leasing and extraction of public minerals is governed by several statutes and

regulations. The regulatory scheme governing a particular lease and its permitting depends on

the resource extracted (*e.g.*, coal, natural gas, or oil) and the location of the extraction (onshore

or offshore), among other factors.[2] BLM has primary jurisdiction over onshore mineral estates,

while the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental

Enforcement regulate offshore drilling. The Office of Natural Resources Revenue manages

monetary transactions for onshore and offshore extraction.

4.      Generally, private lessees that extract public minerals must pay royalties –

calculated as a percentage of the underlying resource's value – to the United States. In addition,

industries operating on federal lands pay bonus bids, rents, and other fees.

---

[2] *See generally* Jayni F. Hein, *Federal Lands and Fossil Fuels: Maximizing Social Welfare in Federal Energy Leasing,* 42 Harv. Envtl. L. Rev. 1, 10-12 (2018).

5.      Collectively, these revenues flow to the United States Treasury and to tribal treasuries.  In 2017, the United States collected nearly $7 billion in revenue from the disposition of the American public's oil, gas, and coal.[3]

6.      The United States Treasury, in turn, disburses royalty proceeds to states and to federal programs such as land reclamation, the Land and Water Conservation Fund, and historic preservation efforts.[4]

7.      States depend on federal royalty revenues to replenish their general funds, and to pay for public schools and infrastructure.  In Colorado, nearly half of the $92 million received in royalties from state land extraction is allocated to supply the State Public School Fund.[5]  In Montana, 75% of federal royalty revenues flow to the state general fund.[6]  And New Mexico receives nearly $500 million in annual royalty revenue, which is then used to help fund state schools and hospitals.[7]

8.      When the government sets royalty rates too low – or when it uses inaccurate valuation methods – it encourages inefficient overleasing by private entities and lowers overall

---

[3] DOI, *Natural Resources Revenue Data, Revenue from Extraction on Federal Land*, https://revenuedata.doi.gov/explore/#revenue (last visited on Aug. 7, 2018).
[4] DOI, *Natural Resources Revenue Data, Federal Disbursements*, https://revenuedata.doi.gov/explore/#federal-disbursements (last visited on Aug. 7, 2018).
[5] *See* Colo. Fiscal Inst., *CFI Brief: Federal Coal Program Reform Could Provide Much Needed Resources to Local Budgets* (Aug. 17, 2015), http://coloradofiscal.org/wp-content/uploads/2015/08/2015-8-17_Coal-Royalties-FINAL.pdf; DOI, *Natural Resources Revenue Data, Colorado, State Disbursements,* https://revenuedata.doi.gov/explore/CO/ (last visited Aug. 7, 2018).
[6] Mont. Dep't of Revenue, *Biennial Report: July 1, 2014 – June 30, 2016* at 129 (2016), https://mtrevenue.gov/wp-content/uploads/2017/07/2016-Biennial-Report-Complete.pdf.
[7] N.M. Legislative Fin. Comm., *Oil and Natural Gas Revenue* (May 2018), https://www.nmlegis.gov/Entity/LFC/Documents/Finance_Facts/finance%20facts%20oil%20and%20gas%20revenue.pdf.

revenue to federal, state, and tribal treasuries.   In short, leasing-related policy is a matter of significant public importance.

9.      The membership of the RPC as constituted represents almost exclusively the interests of parties who benefit from resource extraction and energy development activities on public lands, with no representation of taxpayer advocates or conservation interests.  Plaintiff seeks information that would illuminate for the public the process by which Defendants selected the RPC's members.

10.      Defendants' failures to respond to Plaintiff's requests violates FOIA and deprives the public of the transparency to which they are entitled.  Accordingly, Plaintiff seeks injunctive relief compelling Defendants to immediately and fully comply with Plaintiff's requests under FOIA.

## JURISDICITON AND VENUE

11.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

12.      Venue in this Court is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

13.      Plaintiff Democracy Forward Foundation is a not-for-profit public interest organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to promote transparency and accountability in government, in part by educating the public on government actions and policies.

14.     Defendants DOI and BLM are federal agencies within the meaning of FOIA, *see* 5 U.S.C. § 552(f)(1), that are headquartered in Washington, D.C.  Defendants have possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

### DOI's land management responsibilities, and the RPC

15.     DOI is responsible for managing federally-owned lands and subsurface energy resources like oil and natural gas.

16.     Congress has mandated that DOI and BLM manage federally-owned lands according to several goals, including, *inter alia*, "protect[ing] the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values" of the lands, "preserv[ing] and protect[ing] certain public lands in their natural condition," "providing food and habitat for fish and wildlife and domestic animals," and "provid[ing] for outdoor recreation and human occupancy and use."  43 U.S.C. § 1701(a)(8).

17.     DOI should also ensure that "the United States receive fair market value of the use of the public lands and their resources," 43 U.S.C. § 1701(a)(9), and "provide for payments to compensate States and local governments for burdens created as a result of the immunity of Federal lands from State and local taxation," doing so "on a basis equitable to both the Federal and local taxpayer."  43 U.S.C. § 1701(a)(13).

18.     One of the most important mechanisms for ensuring that the United States receives fair market value of the use of public lands is the collection of royalties paid by lessees as a portion of the value of the energy production from public resources.  *See* 30 U.S.C. Ch. 3A.

19.     Royalty rates have long been the subject of policy debate, as energy companies and taxpayer advocates sometimes disagree about what constitutes a "fair market value" for the

extraction of public resources.  In 2017, the Government Accountability Office ("GAO") concluded that raising federal royalty rates could raise millions of dollars in federal revenue each year, with the higher royalty rates more than offsetting any corresponding decline in production and providing an increased return to taxpayers.  U.S. Gov't Accountability Office, GAO-17-540, Oil, Gas, and Coal Royalties: Raising Federal Rates Could Decrease Production on Federal Lands but Increase Federal Revenue (2017).

20.     When Secretary Zinke signed the charter for the RPC in March 2017, he directed that the RPC "provide advice to the Secretary . . . on the fair market value of and on the collection of revenues derived from, the development of energy and mineral resources on Federal and Indian lands."[8]

21.     Of the 20 individuals Secretary Zinke selected as primary members of the RPC, none come from public interest or environmental organizations.

22.     Notably, six of the primary members, and six of the alternate members, are representatives of fossil fuel and energy companies or lobbying organizations on their behalf. Most of these members are employees of companies who hold leases from BLM.[9]

### Plaintiff's FOIA Requests

23.     To understand and explain to the public the process by which Secretary Zinke selected individuals to serve on the RPC, Plaintiff filed two FOIA requests on May 9, 2018.

24.     The FOIA requests, attached here as Exhibits A (the "DOI Request") and B (the "BLM Request"), were sent to DOI and BLM, respectively.  The two requests requested

---

[8] Royalty Policy Comm. Charter (signed Mar. 29, 2017; filed Apr. 21, 2017), *available at* https://www.doi.gov/sites/doi.gov/files/uploads/2017_charter_royalty_policy_committee.pdf.
[9] *See* DOI, Royalty Policy Committee Member Directory 40-52 (Sept. 2017), *available at* https://www.doi.gov/sites/doi.gov/files/uploads/member_directory_with_out_contact_info_10-2-17.pdf

communications between certain political appointees at each agency and the twelve energy

companies and energy lobbying organizations whose employees are among those seated on the

RPC.

25.     Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. §

552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because

it is likely to contribute significantly to public understanding of the operations or activities of the

government and is not primarily in the commercial interest of the requester."

26.     On May 15, 2018, DOI sent Plaintiff an acknowledgement that it had received the

DOI Request, and assigned it control number OS-2018-01146.  DOI informed Plaintiff that it

was "in the process of determining" whether to grant Plaintiff's request for a waiver of search

and processing fees, and that DOI was placing the DOI Request in the "Complex" processing

track, allowing DOI to take a 10-workday extension for processing the Request under 43 C.F.R.

§2.19.  To date, this May 15, 2018 acknowledgement letter was the last communication from

DOI to Plaintiff.

27.     To date, Plaintiff has received no communication, even an acknowledgement,

from BLM concerning the BLM Request.

28.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), Defendants were required to determine

whether to comply with the FOIA requests within twenty business days of receipt of the requests

and to notify Plaintiff immediately of their determination, the reasons therefor, and the right to

appeal any adverse determination.

29.     As of the date of this complaint, Defendants have failed to: (1) determine whether

to comply with the FOIA requests, (2) notify Plaintiff of any such determinations of the reasons

therefor, (3) advise Plaintiff of the right to appeal any adverse determinations, or (4) produce the

requested records or otherwise demonstrate that the requested records are exempt from production.

30.     Because Defendants have failed to comply with the time limits set forth in 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

31.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

32.     By failing to respond to Plaintiff's requests within the statutorily mandated twenty days, Defendants have violated their duties under 5 USC § 552, including but not limited to the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and not to withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1.  order Defendants to conduct a search for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably likely to lead to discovery of all responsive records;

2.  order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.  enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

4.  order Defendants to grant Plaintiff's requests for a fee waiver;

5.  award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6.  grant any other relief this Court deems appropriate.

Dated: August 9, 2018

Respectfully submitted,

*/s/ Javier M. Guzman*
Javier M. Guzman (D.C. Bar No. 462679)
Travis Annatoyn* (*pro hac vice* motion forthcoming)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jguzman@democracyforward.org
tannatoyn@democracyforward.org

*Counsel for Plaintiff*

*Admitted in New York; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.